JOHN HOFFMAN ET AL.

v.

CHARLES E. CULVER ET AL.

SALE—PASSING TITLE.—In a contract of sale of the contents of a car loaded with grain, the quantity of which is unknown, and the sale is for cash, to be paid as soon as the grain can be weighed, which weighing is necessary in order to ascertain the price to be paid by the buyer, and there is no provision as to delivery, the property in the grain does not pass to the buyer by the bargain, even though the weighing is to be done by him. The payment of the price is a condition preliminary to passing the title.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed November 8, 1880.

This was replevin in the *cepit* by Charles E. and George N. Culver, as vendors and plaintiffs, against August Martin, John Hoffman, sheriff, and Rumsey and Walker, defendants, to replevy a quantity of wheat. The pleas were: 1. *Non cepit.* 2. Property in August Martin. 3. Justification under a writ of attachment from the Circuit Court of Cook county, at the suit of Rumsey and Walker against the estate of said August Martin, duly delivered to Hoffman, as sheriff, and levied upon the wheat in question, averring property in said Martin at the time. Issue was taken on the pleas, and by agreement of counsel, the case was submitted to the court to be tried without a jury on the following agreed state of facts:

On the 11th day of August, 1879, plaintiffs, being the owners, sold for cash, to be paid as soon as the grain could be weighed out, by sample, to one August Martin, the contents of car 357, of Chicago, Burlington & Quincy Railroad Company, which car at the time of the sale was upon the track of said railroad company, in Chicago, Illinois; that at the time of the sale, Martin agreed to pay the plaintiffs ninety-two cents a bushel for the number of bushels found to be in the car, the

number of bushels to be ascertained by weight by Martin; that thereupon plaintiffs gave Martin a delivery ticket or order on the railroad company, in whose custody said car 357 was, in these words:

"Please deliver car 357, to bearer, on track, and oblige yours respectfully,

"CULVER & Co."

Which order was dated August 11, 1879, and which order Martin accepted on that day, and under which order Martin took possession of and commenced unloading the contents of said car 357; that two wagon loads taken from said car 357, by Martin, and weighing 15,960 pounds net (266 bushels), were hauled to the Michigan Central track, in said city of Chicago, and on the same day placed by Martin in car 4358, of the Blue Line, on said Michigan Central track, and there mixed with other wheat of the said Martin, of the same grade, by Martin, without plaintiff's knowledge or consent; that the purchase price of the said wheat so removed by Martin has not been, nor any part thereof, paid plaintiffs by Martin; that on the evening of August 12, 1879, and before all of said wheat in car 357 was weighed out, defendants Rumsey and Walker attached by a good and sufficient levy, the contents of said car, 4358, being 424 bushels of wheat, as the property of Martin; that on August 15, 1879, defendant, John Hoffman, as sheriff of Cook county, Illinois, while holding said wheat by virtue of the attachment writ issued in behalf of Rumsey and Walker, defendants, in the suit then pending in the Circuit Court of Cook County against said August Martin, and by the consent of said Rumsey and Walker, and without the knowledge or consent of said plaintiffs, placed said wheat, the contents of car 4,358, in Central Elevator B, and received the usual warehouse receipt for the contents of said car, being 424 bushels, which receipt was made subject only to the order of said John Hoffman, sheriff; that on August 16, 1879, said sheriff surrendered said warehouse receipt for 424 bushels to said elevator company, and received in place thereof for the contents of said car 4358, one for 158 bushels, and one for 266 bushels (15,960 pounds), the amount claimed by plaintiff's replevin writ; and

that on August 16, 1879, the plaintiff, by the writ in this case, did replevy 15,960 pounds (266 bushels) of the contents of said car 4358, and that said plaintiffs, by said replevin writ, obtained possession of said warehouse receipt for 256 bushels of the contents of said car 4358; that defendants Rumsey and Walker were ignorant of the terms of sale by plaintiffs to said Martin of said wheat; that on the 17th day of September, 1879, said Rumsey and Walker, defendants, duly recovered judgment in their attachment suit against said Martin, by default, for $1,373.12 and costs, no part of which judgment has been paid.

The court found the issues for plaintiffs, finding the property in them, and overruling defendants' motion for new trial, gave judgment on the finding; to which defendants excepted, and appealed to this court.

Messrs. HIGGINS, FURBER & COTHRAN, for appellants; that there was a complete delivery so as to pass title, cited Webster v. Granger, 78 Ill. 230; Turley v. Bates, 2 Hurl. v. Colt. 200; Burrows v. Whitaker, 71 N. Y. 291; Graff v. Fitch, 58 Ill. 373; May v. Tallman, 20 Ill. 443.

The sole object in weighing the grain was to ascertain the the total value, at a rate already agreed upon, and in no manner affects the question of delivery: Macomber v. Parker, 13 Pick. 175; Bradley v. Wheeler, 44 N. Y. 495; Crofoot v. Bennett, 2 N. Y. 258; Burrows v. Whitaker, 71 N. Y. 291; Tyler v. Strong, 21 Barb. 198.

If the grain had been destroyed by any casualty, the loss would have fallen upon the vendee : Webster v. Granger, 78 Ill. 230; Wing v. Clark, 24 Me. 366; Burrows v. Whitaker, 71 N. Y. 291; Bloxam v. Sanders, 4 Barn. & Cres. 941; Benjamin on Sales, § 678.

Where delivery and payment are to be concurrent acts, the title does not pass until payment: Chapman v. Lathrop, 6 Cow. 110; Ballard v. Burgett, 40 N. Y. 314; Zuchtman v. Roberts, 109 Mass. 53; Lees v. Richardson, 2 Hilt. 164.

But where there is delivery without requiring payment, and no evidence of an intention to retain title, the delivery com-

pletes the sale. Chapman v. Lathrop, 6 Cow. 110; Bell v. Farrar, 41 Ill. 400; Lees v. Richardson, 2 Hilt. 164; Lupin v. Marie, 6 Wend. 77.

Where a vendor actually delivers the property, the title *eo instanti* vests in the vendee, and an innocent purchaser from him acquires a good title as against the vendor: McCormick v. Hadden, 37 Ill. 370; McNail v. Ziegler, 68 Ill. 224; Lucas v. Campbell, 88 Ill. 447; Hervey v. R. I. Locomotive Works, 93 U. S. 664.

A *bona fide* attaching creditor in such a case has the same rights as a *bona fide* purchaser from the vendee: Van Duzer v. Allen, 90 Ill. 499; Murch v. Wright, 46 Ill. 487; Lucas v. Campbell, 88 Ill. 447; Hervey v. R. I. Locomotive Works, 93 U. S. 664; Olyphant v. Baker, 5 Denio, 379; Lupin v. Marie, 6 Wend. 77.

Replevin will not lie in this case: Hammond v. Anderson, 4 Bos. & Pull. 69; Slubey v. Heyward, 2 H. Black. 504.

Mr. D. L. Shorey and Mr. Paul Shorey, for appellees; that, the vendor retained a lien, and by replevin could enforce his right of stoppage *in transitu*, cited 16 Md. 422; 4 Dana, 7.

There must be an intention to waive cash payment: Morgan v. Gregg, 46 Barb. 183; Haggerty v. Palmer, 6 Johns. ch. 437; Wait v. Green, 35 Barb. 585.

McAllister, P. J. This was an action of replevin, brought by the Culvers, appellees, against the appellants, Rumsey and Walker, Hoffman, sheriff, and August Martin, for a quantity of wheat which had been seized by the sheriff by an attachment in favor of Rumsey & Walker, and against said Martin. The case was submitted to the court, for trial without a jury, on an agreed statement of facts, from which, directly, or by clear inference, it appears that, August 11, 1879, the Culvers, being the owners of wheat, the quantity unknown, contained in a railroad car on the track of a railroad company, having the possession of it as bailee or agent of the Culvers, bargained with said Martin at Chicago, where the grain was, to sell by sample to him, said Martin, the contents of said car (designated as car

357), for cash, to be paid as soon as such contents could be weighed out, at the rate of 92 cents a bushel for the number of bushels which should be found to be in said car, such number to be ascertained by weighing by said Martin.

· Those being the circumstances and terms of the contract, the first question is, did the contract, *ipso facto*, pass the property in the commodity out of the sellers and vest it in the buyer?

If it be said that the question whether the property passed to the buyer by the contract, is, in many cases, made to depend upon the intentions of the parties as was laid down in Seckel et al. v. Scott, 67 Ill. 106, and the cases there referred to, then it may be answered, that, by those authorities, such intention is always a question of fact to be found by the jury, and the court in this case, sitting in the place of a jury, has found there was no such intention.

We take it to be clear law, that when in a contract of sale of the contents of a car or bin, it being grain, but the quantity of which is unknown, and the sale is for cash, to be paid as soon as the grain can be weighed, which weighing is necessary in order to ascertain the price to be paid by the buyer, and there is no provision as to delivery, the property in that case, the grain, does not pass to the buyer by the bargain, even though the weighing is to be done by him, and there was nothing to be done by the seller to ascertain the identity, or the quantity or quality of the commodity. The payment of the price is a condition preliminary to the property passing to the buyer; and that could not be done before the quantity was ascertained by weighing.

The material features of this case are peculiar throughout, and must control in its decision. In Hanson v. Meyer, 6 East, 614; a quantity of starch was contracted to be sold at a certain price per hundred; the vendor gave the vendees an order addressed to the keeper of the warehouse where the starch lay, directing him to weigh and deliver all his starch to the vendees. The court held that the order itself did not amount to a delivery or authorize the vendees to take the starch by their own act; and that the property did not pass before the weighing,

which, by the terms of the contract was to precede the delivery and ascertain the price.    Lord Ellenborough, Ch. J., in delivering the opinion of the court, said :    "By the terms of the bargain, two things in the nature of conditions or preliminary acts on their (the buyers) part, necessarily preceded the absolute vesting in them of the property contracted for; the first of them does so according to the generally received rule of law in contracts of sale, viz.: the payment of the agreed price or consideration for the sale; the second, which is the act of weighing, does so in consequence of the particular terms of this contract, by which the price is made to depend upon the weight. The weight, therefore, must be ascertained, in order that the price may be known and paid."    He distinguished that case from Hammond v. Anderson, 1 Bos. &P. New. R. 69, by saying that in the latter case, the bacon was sold for a certain fixed price, and that the weighing mentioned in the case was merely for the buyer's own satisfaction, and formed no ingredient in the contract. In the case at bar the weighing is an actual ingredient of the contract, to be done by the buyer, it is true, but it was necessary to ascertain the price.    The sale was for ready money; there being no provision as to delivery, the payment of the price and delivery were, therefore, to be concurrent acts.

Sheply v. Davis, 5 Taunt. 617, was similar to Hanson v. Meyer, and the Common Pleas followed the same ruling.    The court, Gibbs, Ch. J., speaking of the effect of a delivery order, said:    "If anything remained to be done as between vendor and vendee, the delivery could not be complete."    So, in Swanwick v. Sothern, 9 Ad. & E. 895, Lord Denman stated the rule of the English law to be thus:    "If the whole of a commodity be sold, but weighing is necessary to ascertain the price, because the quantity is unknown, the weighing must precede the delivery; and the symbolical delivery without such weighing will not be sufficient.    But where the identity of the goods and the quantity are known, the weighing can only be for the satisfaction of the buyer, as was held in Hammond v. Anderson, 1 New. R. 69; in such case symbolical delivery is sufficient."    Many more English cases could be cited where the same distinction is recognized, between the case when the quantity

of the commodity is unknown and the weighing is an ingredient of the contract itself, and that class where the quantity is known, and the act of weighing is only for the satisfaction of the buyer.

The case of Ward v. Shaw, 7 Wend. R. 404, is one where the lines of that distinction are more marked, and the case more directly in point than any other we have been able to find. Ward brought trover against Shaw to recover the value of two fat oxen which had been taken by the latter, as sheriff, out of the possession of one Crawbuck by virtue of an execution against the latter, in favor of one Platt. The cattle came into the possession of Crawbuck, under these circumstances : He was a butcher and agreed to purchase them of Ward, at $7.50 for each cwt., which the quarters should weigh when slaughtered, he to take the cattle into his possession, prepare them for slaughtering, slaughter them in the week in which the contract was made, and when slaughtered take the quarters to market, weigh them, and pay for the cattle the amount the weight of the quarters would come to at $7.50 for each cwt., which sum was to be received by Ward in full, as well for all the other parts of the cattle as the quarters. Crawbuck took the cattle into his possession, and on the same day they were levied on and taken under Platt's execution, which was issued on a judgment obtained previous to said contract between Ward and Crawbuck.

On the trial there was a verdict and judgment for the defendant, the presiding judge instructing the jury that the contract between Ward and Crawbuck, and the delivery of the cattle to Crawbuck, vested the title and ownership in him, and that they were subject to the execution. On error from the Supreme Court, a well-considered and instructive opinion was delivered by Savage, Ch. J., holding that the instruction to the jury, by the court below, was wrong, and after laying down the general rule applicable to contracts of sale of personal property, where no credit is given for the price, and no agreement for immediate delivery, the learned judge quoted the above observation of Lord Ellenborough, in Hansen v. Meyer, and then said:  "The sale being for cash, and by weight, the

Hoffman v. Culver.

vendor is not bound to deliver until payment is made.   Payment cannot be made until the price is ascertained by the act of weighing.   Should, therefore, the vendee refuse to slaughter the oxen according to contract, and put them to work on a farm, the vendor may re-take them.   Should he refuse to pay, after weighing the quarters, the owner may take possession of his slaughtered cattle, for the property has not passed under such a contract until payment is made or waived.   The terms of the contract in this case forbid the idea of the waiver of payment when the cattle were delivered to be prepared for slaughter. The rule laid down in Hanson v. Meyer, is, that the property does not pass when anything remains to be done by the vendor; when the thing to be done is necessary to ascertain the price and the sale is for cash, it can make no difference whether that thing is to be done by the vendor or the vendee.   The property is not to pass till payment, and until the price is ascertained, payment cannot be made or waived, unless by express terms; the acts of the vendor cannot, before that time, be construed into a waiver."   The court putting the decision of the case upon its own peculiar circumstances, further said :   "In general the act of weighing or measuring is to be done by the seller, but parties have a right to stipulate that the purchaser shall do such act.   It is sufficient that the vendor has an interest in the act to be done; and has a right to be present when the weight is ascertained, then, and not before, can the vendor demand payment.   If payment is then made, or waived, the property passes absolutely, otherwise not."

That case was a much stronger one for the execution, than the one at bar is for the attachment creditor, because in the former, the seller made what was apparently an actual delivery of the cattle to the purchaser, while in the present case, there is no pretense that the sellers made any actual delivery, and what was done on their part tended only to show a symbolical delivery.   The facts tending to show such symbolical delivery are simply that, after the terms of the sale were agreed on, the sellers gave to the buyer an order addressed to the railroad company in whose custody as bailee or agent of the sellers, the car was which contained the wheat, directing such company to

deliver that car on the track to the buyer.    The agreed statement of facts shows that Martin, the buyer, accepted this order and immediately, on the same day, without, so far as the case shows, presenting it at all to the bailee or agent, or in any manner obtaining any delivery of the car, or assent or recognition of the order by such bailee or agent, took possession of it, and without the knowledge or consent of the sellers weighed out two hundred and sixty-six bushels of the wheat, hauled it away, put it in a car of another 'party, mixing it with other grain, where it was immediately seized and taken away by virtue of the Rumsey & Walker attachment, Martin never having paid one cent of the purchase price.

It is clear under the circumstances, that the vendors had never assented to that possession and those acts on the part of Martin, and that upon the law to be applied to them, the property and ownership in the wheat had not passed to and become vested in him, as whose property it was seized; because, although 266 bushels of the wheat had been weighed, yet none of the price of it had been paid, and the vendors had done no act which could operate as a waiver of such payment.    This must be considered as having been so found, by the court below in finding the defendants guilty, and property in the plaintiffs.

It is the settled law of England, and it ought to be the law here, that, where goods are in the possession of a third party as bailee or agent of the vendors, if the vendors make a contract of sale of them while so situated, for cash, and the vendee has not paid for them, the giving by the vendor to the vendee of a delivery order addressed to such bailee or agent, directing him to deliver the goods to the vendee, but which is not presented to such bailee or agent and assented to by him, will have no effect in changing the property in such goods from the vendor to the vendee.

The property and possession will be regarded as still remaining in the vendor, for the reason that until such bailee or agent attorn to the vendee to whom such order is given, he will be regarded as remaining the agent of the vendor, and his possession as that of the vendor: Bentall v. Burn, 3 B. & C. 423;

Farnia v. Home, 16 Mees. & W. 119; McEwen v. Smith, 2 House of Lords Cases, 309; Benj. on Sales, 2nd Ed. 132–3.

Martin not being entitled to a delivery by the terms of the contract, and the vendors giving to him merely the delivery order upon their bailee or agent, which was not, as we have seen, equivalent to actual delivery, it is preposterous to claim that the vendors made an absolute and unqualified delivery, under the circumstances stated, which amounted to a waiver of payment, and converted the cash sale into one on credit. These attaching creditors of Martin would have acquired just as much right to hold this grain if they had attached it as Martin's the moment the bargain of sale was closed, as when they did. The matter of weighing being an ingredient in the contract, the vendors were interested in that act, and had a right to be present.

It was entirely consistent with what was done to assume that they intended to secure that right when the delivery of the car on the track to the buyer, by their agent, was made. But, by Martin taking possession of his own independent act, removing the wheat and mixing it with other grain, the vendors were deprived of that right. But it is enough that the vendors made no actual delivery, and that Martin's possession was not with their assent.

The judgment of the court below will, therefore, be affirmed.                                                      Affirmed.